UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TMSSS ENTERPRISE LLC; and ALEJANDRO MEDINA,<br><br>                      Plaintiffs,<br><br>v.<br><br>JAMES TOOMA, an individual; CHALDEAN PROPERTIES INC., a California Corporation; and DOES 1–10, inclusive,<br><br>                    Defendants. | Case No.: 24-CV-12 JLS (MMP)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>(ECF No. 12) |

Presently before the Court is Plaintiffs TMSSS Enterprise LLC ("TMSSS") and Alejandro Medina's (collectively, "Plaintiffs") Renewed Motion for Entry of Default Judgment ("Mot.," ECF No. 12). Noting that Defendants James Tooma and Chaldean Properties Inc. (collectively, "Defendants") had not filed an opposition to the Motion, the Court took the Motion under submission without oral argument on September 12, 2024. ECF No. 14. Having carefully considered Plaintiffs' Amended Complaint ("FAC," ECF No. 11), submissions, and the law, the Court **GRANTS** Plaintiffs' Motion.

## BACKGROUND

TMSSS is a California limited liability company that owns and operates "high quality smoke shops" throughout California and Texas. FAC ¶¶ 1, 17. Medina has owned

and operated these smoke shops "since at least as early as 1997," forming TMSSS in 2023 "to hold and administer his intellectual property rights related to the trade name, trademarks, service marks and copyrights therein." *Id.* ¶ 2(a). Plaintiffs' branding strategy utilized the marks "Vishions" and "Vishions Smoke Shop" (the "Word Marks") in connection with their services—specifically, the "operation, provision, offering for sale, sale, marketing, advertising, and promotion of smoke shops and related products and accessories." *Id.* ¶¶ 16–17. Across that same period, Plaintiffs have also used the following logos (the "Eye Marks") to market their business:



*See id.* ¶¶ 15–16.

Plaintiffs allege Tooma—an individual who resides in Spring Valley, California—owns Chaldean Properties, a California corporation also located in Spring Valley. *Id.* ¶¶ 3–4. Together, Defendants operate "Vishions Spring Valley," a business that "sell[s] competing goods to many of the same consumers served by Plaintiffs." *Id.* ¶¶ 19–20. This business, according to Plaintiffs, uses "a tradename and mark identical to" the Word and Eye Marks. *Id.* ¶ 19. Plaintiffs uncovered Defendants' actions when Medina, while driving through Spring Valley around March 2022, "observed a new smoke shop using the same name 'Vishions Smoke Shop' and an identical and counterfeit version of [his] eye design logo on interior and exterior store signage for a competing business" that sold the same goods and services as his own smoke shops, "including smoker's articles such as cigarettes, cigars, pipes, rolling papers, lighters, vaping products, as well as other merchandise, gifts and accessories." *Id.* ¶ 19(a). Plaintiffs allege Defendants, later in 2022, continued to exploit Plaintiffs' goodwill and favorable reputation when they created websites and social

/ / /

/ / /

media accounts using the "Vishions" moniker.[1]  And Defendants did not stop there—they also allegedly filed fictitious documents with the San Diego Clerk and Recorder's Office under the name "Vishions Smoke Shop" and applied for two federal trademarks to the United States Patent and Trademark Office ("PTO") in June 2022 "that usurp, misappropriate, infringe upon and conflict with Plaintiffs' [trademark] rights."  *Id.* ¶¶ 19(c), 27

In contrast to Defendants, who filed their federal trademark applications in 2022 on an intent-to-use basis, Plaintiffs did not file for federal trademark protection of the Word and Eye Marks until various dates in 2023.  *Id.* ¶¶ 11–13, 18.  Plaintiffs also filed for—and obtained—trademark protection under California law in 2023 for the Word Mark "Vishions Smoke Shop."  *Id.* ¶ 14.  All of Plaintiffs' applications and/or registrations claim a date of first use of February 28, 1997.  *Id.* ¶¶ 11–14.

Plaintiffs filed the Complaint on January 3, 2024, alleging (1) trademark infringement under 15 U.S.C. §§ 1114, 1125(a); (2) unfair competition and false advertising under California Business and Professions Code §§ 17200, 17500; and (3) unjust enrichment.  *Id.* ¶¶ 25–43.  Defendants failed to answer the Complaint, and the Clerk therefore entered default against both Tooma and Chaldean Properties on February 16, 2024.  ECF No. 7.  Plaintiffs moved for default judgment one month later, seeking (1) a permanent injunction barring Defendants from continued use of the Word and Eye Marks or substantially similar marks, (2) attorneys' fees and costs, and (3) an order directing the PTO to cancel Defendants' trademark applications pertaining to the infringing marks.  ECF No. 8-1 at 1.

On July 31, 2024, the Court denied the Motion, finding Plaintiffs had failed to plausibly allege prior use in commerce as is required to prevail on a claim for federal trademark infringement.  *See* ECF No. 10 ("Order") at 8.  The Court also found the

---

[1] Defendants allegedly created an Instagram profile named "vishionssmoke.shop" and a website at www.vishions.net.  FAC ¶ 19(b).

Complaint's allegations related to Tooma's involvement in the underlying infringement too conclusory to support holding him personally liable for the acts of Chaldean Properties. *Id.* at 9–10.  Plaintiffs were given twenty-one days to file an amended complaint curing the deficiencies noted in the Order along with a renewed motion for default judgment.  *Id.* at 11.  Plaintiffs filed both an Amended Complaint and Renewed Motion for Default Judgment on August 20, 2024, alleging the same causes of action and seeking the same injunctive relief.  *See* FAC; Mot.  As before, Defendants have not filed an opposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application.  Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion.  *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016).

The Ninth Circuit has set out seven factors, known as the *Eitel* factors, a court may consider when exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

When weighing these factors, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); *see also* Fed. R. Civ. P. 8(b)(6).  "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

1

**ANALYSIS**

2

**I.    Jurisdiction**

3      Before turning to the merits, the Court must assess whether it has jurisdiction to enter
4  default judgment against Defendants.    In the Order, the Court determined that both
5  Defendants were properly served under Federal Rule of Civil Procedure 4, that the Court
6  has subject matter jurisdiction over these claims under 15 U.S.C. § 1121 and 28 U.S.C.
7  § 1367, and that the Court has general personal jurisdiction over both Defendants.  Order
8  at 4–6.  The Court also determined that it is not procedurally barred from entering default
9  judgment under 50 U.S.C. § 3931 and Federal Rule of Civil Procedure 55(b)(2).  *Id.* at 6.
10  Because these conditions remain unchanged, the Court again finds the necessary conditions
11  required for entry of default judgment satisfied and proceeds to the *Eitel* factors.

12

**II.    *Eitel* Factors**

13

**A.    Factor I—Prejudice to Plaintiff**

14      The first factor weighs in favor of entering default judgment.  Plaintiffs state a valid
15  cause of action against Defendants (as discussed below), and Defendants have failed to
16  appear or otherwise participate in this action.  Thus, Plaintiffs have suffered and continue
17  to suffer injury from Defendants' illicit use of their marks, and Plaintiffs lack any other
18  recourse to recover damages in the absence of an answer from Defendants.  This constitutes
19  prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.
20  2002) ("Potential prejudice to Plaintiffs favors granting a default judgment.  If Plaintiffs'
21  motion for default judgment is not granted, Plaintiffs will likely be without other recourse
22  for recovery."); *see also Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*,
23  847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012).

24

**B.    Factors II and III—Claim Merits and Sufficiency of Complaint**

25      To warrant entering a default judgment, the complaint's allegations must be
26  sufficient to state a claim upon which relief can be granted.  *Danning v. Lavine*,
27  572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this standard when the claims
28  "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A default concedes the truth of the allegations in the complaint, except those relating to damages.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) (noting that "[i]n assessing liability, the complaint's allegations are taken as true" because "a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact").

At issue in the present case are claims for (1) federal trademark infringement, unfair competition, and false advertising under 15 U.S.C. §§ 1114, 1125(a); (2) unfair competition and false advertising under California Business & Professions Code §§ 17200, 17500, *et seq.*; and (3) unjust enrichment.  Because "the remedies sought here are available based on the trademark claim alone," the Court may limit its analysis to Plaintiffs' claim for trademark infringement under the Lanham Act.  *BMW of N. Am., LLC v. Zahra*, 2016 WL 215983, at *3 (N.D. Cal. Jan. 19, 2016) (citing *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 708 n.6 (9th Cir. 1999)).

### 1.    Trademark Infringement of Unregistered Mark

To prevail on a claim for infringement of an unregistered mark under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a),[2] a plaintiff must prove "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion . . . ."  *Dep't of Parks and Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  Though "technically distinct, . . . the same

---

[2] Plaintiffs appear to conflate 15 U.S.C. § 1114 with 15 U.S.C. § 1125, but the two provisions cannot be thought of as equivalent.  Indeed, "[w]hereas [§ 1114] provides protection only to registered marks, [§ 1125] protects against infringement of unregistered marks and trade dress as well as registered marks, and protects against a wider range of practices such as false advertising and product disparagement." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999) (internal citations omitted).  Because it is undisputed that none of Plaintiffs' marks are federally registered, the Court only considers 15 U.S.C. § 1125 as the basis of Plaintiffs' claims.

broad standards of protection apply to trademarks and trade names."[3]  *See Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–35.

As to the first prong, Plaintiffs can demonstrate a protectable ownership interest in two ways.  The smoother pathway is to obtain federal registration through the PTO, the achievement of which constitutes "prima facie evidence" that a mark is valid and protectable.  *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a)).  The more burdensome pathway, as Plaintiffs rely on here, is to show prior use in commerce.  *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012).  This "use in commerce" requirement has two elements: a plaintiff must (1) render services in commerce and (2) use or display the mark publicly in the sale or advertising of those services.  *Id.* at 1204.  "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).  The Ninth Circuit has adopted a "totality of the circumstances" approach in determining whether the "use in commerce" test has been satisfied.  *Rearden*, 683 F.3d at 1205.

Though Plaintiffs' initial effort at obtaining default judgment failed at the first prong, their renewed Motion has remedied that failure.  The Court faulted Plaintiffs for the "high level of generality" found in the Complaint, but the FAC now incorporates the requisite factual allegations to assert a plausible claim that Plaintiffs were the senior user of the Word and Eye Marks.  The FAC alleges Medina owned and operated more than twenty

---

[3] "Trade names symbolize the reputation of a business as a whole.  In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services."  *Accuride*, 871 F.2d at 1534 (citing *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)).  Although Plaintiffs do not touch upon this distinction in their Complaint or Motion, nor do they specify precisely which goods or services the asserted marks protect other than their "smoke shops" in the general sense, the nuanced distinction collapses in the present case into an identical legal framework; thus, the Court need not dwell on whether Plaintiffs use the marks in connection with specific products, their smoke shops in a general sense, or both.

(20) retail smoke shops under the name "VISHIONS SMOKE SHOP" and/or "Vishions," each of which distinguished its offerings using the Eye Marks as part of their exterior signage. FAC ¶ 2(a). These smoke shops had all allegedly been in operation since "at least as early as 1997." *Id.* While the Complaint lacked the required specificity as to when Defendants began unlawfully using the Word and Eye Marks, the FAC now adds that, around March 2022, Medina "observed a new smoke shop using the same name 'Vishions Smoke Shop' and an identical and counterfeit version of Medina's eye design logo on interior and exterior store signage" for a smoke shop "selling and promoting the very same products and services, namely including smoker's articles such as cigarettes, cigars, pipes, rolling papers, lighters, [and] vaping products." *Id.* ¶ 19(a). Around the same time, Plaintiffs also discovered various social media accounts using "Vishions" branding, including an Instagram account named "vishionssmoke.shop" and a website called "www.vishions.net." *Id.* ¶ 19(b). Taken collectively, these allegations plausibly suggest that Plaintiffs established priority use in the asserted marks dating back to 1997 and that Defendants' unauthorized use of the marks did not begin until sometime around late 2021 or early 2022.[4] *See* Declaration of Stephen L. Anderson ("Anderson Decl.," ECF No. 12-2) ¶ 3 (noting records Tooma filed with the San Diego Clerk and Recorder's Office declaring Tooma "'first began to transact business under the name' Vishions Smoke Shop as of November 1, 2021").

As to the second prong—which analyzes the likelihood of confusion between the two marks at issue—courts consider eight factors, known as the *Sleekcraft* factors. *Rearden*, 683 F.3d at 1209. These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the

---

[4] Plaintiffs also attached a Declaration more carefully placing the commencement of Defendants' unauthorized use of the marks "at some time between November 2021 and March 2022" based on the timing of when a different smoke shop called Valley Vape—which Defendants' new smoke shop replaced—went out of business. Declaration of Alejandro Medina ("Medina Decl.," ECF No. 12-1) ¶ 7.

purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). However, these eight factors are not exhaustive and "other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Id.* Additionally, "[w]hen the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *See Sleekcraft*, 599 F.2d at 348. Furthermore, the counterfeiting of another's trademark establishes a presumption of a likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) ("[T]he presumption [of likelihood of confusion] arises when intent to cause confusion is coupled with the use of a counterfeit mark or a mark virtually identical to a previously registered mark.").

The Court comfortably concludes that Plaintiffs have plausibly alleged likelihood of confusion. Where, as here, the allegedly infringing mark is "used with identical products or services likelihood of confusion would follow as a matter of course." *Brookfield*, 174 F.3d at 1056 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256–57 (9th Cir. 1986)). Because Defendants have allegedly used the asserted marks in connection with smoke shops that offer substantially overlapping products as Plaintiffs, the Court need not "perform the step-by-step examination" otherwise prescribed by the *Sleekcraft* factors. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891(HB), 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004)). Although Plaintiffs have not shown any specific evidence of actual confusion, failing "to prove instances of actual confusion is not dispositive against a trademark plaintiff" because "difficulties in gathering evidence of actual confusion make

its absence generally unnoteworthy." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014). Accordingly, the undisputed facts strongly weigh in favor of finding a likelihood of confusion. Additionally, because default was entered against Defendants, Plaintiffs' allegations that Defendants were willful infringers of Plaintiffs' marks is taken as true. *See Kirakosian v. J&L Sunset Wholesale & Tobacco*, No. 2:16-cv-06097-CAS(PLAx), 2017 WL 4022365, at *5 (C.D. Cal. Sept. 11, 2017); *see also Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809 MMM (PLAx), 2013 WL 3811775, at *5 (C.D. Cal. July 19, 2013) ("An allegation of willful trademark infringement is deemed true when the defendant defaults.").

### 2.    *Individual Liability*

In their Motion, Plaintiffs in no way distinguish between their request for default judgment against Defendant Chaldean Properties and Defendant Tooma. Plaintiffs group the two together, continually alleging "Defendants" engaged in infringement and referring to the actions of "Defendants" generally. Broadly, however, Plaintiffs allege Mr. Tooma, "as the owner, principal, and registered agent of Chaldean Properties Inc., . . . was solely in charge of the corporate defendant's signage, advertising, display, content, designations and the use thereof." Compl. ¶ 4(a). Plaintiffs also allege that Tooma, in his individual capacity, applied to the PTO for trademark protection of the infringing marks. *Id.*

In trademark infringement, personal liability can stem from either alter ego liability or direct participation in the tort. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (stating in a trademark infringement case that "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf" (internal quotation marks and citation omitted)); *see also Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV 09-07849 RZ, 2011 WL 5387075, at *4 (C.D. Cal. Oct. 28, 2011) (holding that "[a]n individual who personally directs a corporation in committing trademark infringement, or who personally commits those acts, is personally liable for that infringement" and that "[t]his is particularly

true when a single individual is the corporation's sole shareholder, sole officer, and sole manager, and performs the infringing acts himself"—"[s]uch personal liability does not depend on piercing the corporate veil"); *Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004) (finding that corporate officers are "personally liable for [a] corporation's copyright and trademark infringements when they are a 'moving, active conscious force' behind the corporation's infringement" (internal citation omitted)).

Plaintiffs have alleged Mr. Tooma is the sole owner of Chaldean Properties Inc., thus making him a corporate officer who would be liable for all torts he authorizes or directs. Plaintiffs have also alleged Mr. Tooma personally directed and controlled the activities described above that constituted infringement of Plaintiffs' Word and Eye Marks. This is sufficient to allege he participated in the tort or at least was a moving force behind the alleged infringement. Taking Plaintiffs' allegations as true, Plaintiffs have pled trademark infringement against individual Defendant Tooma.

In sum, because the FAC is legally sufficient and Plaintiffs' trademark infringement claim under 15 U.S.C. § 1125(a) has merit, these factors weigh in favor of entering default judgment as to both the individual and corporate Defendants.

### C.     *Factor IV—Sum of Money at Stake*

This factor turns on whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, Plaintiffs' damages sought all are within the Lanham Act's provisions for violations of the magnitude at issue in this case. Specifically, Plaintiffs seek permanent injunctive relief and statutory damages of $100,000 per mark used for a total of $200,000, as well as attorneys' fees and costs. Mot. at 23–29. While substantial, the amount of money, by itself, is not necessarily unreasonable. *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL (FFMx), 2014 WL 4679001, at *10 (C.D. Cal. Sept. 18, 2014). Rather, the court must balance "the amount of money at stake in relation to the seriousness of the defendant's conduct." *Vogel v. Rite Aid Corp.*,

992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (internal quotation marks, alterations, and citations omitted).  Here, Plaintiffs accuse Defendants of using Plaintiffs' various marks in hopes of exploiting Plaintiffs' goodwill for pecuniary gain.  Given the gravity of this harm, the need to protect Plaintiffs' marks and consumers, the need to deter further counterfeiting, and the fact that Plaintiffs seek statutory (and thus discretionary) damages, *see Deckers Outdoor Corp.*, 2014 WL 4679001, at *10, the Court finds that this factor does not weigh against default judgment.

### D.    Factor V—Possibility of Factual Dispute

This factor turns on the degree of possibility that a dispute concerning material facts exists or may later arise.  *Eitel*, 782 F.2d at 1471–72.  In the present case, Plaintiffs' allegations must be taken as true due to the default.  And Defendants have been unresponsive since the start of this case.  Accordingly, this factor favors Plaintiffs as any purported factual dispute appears settled and there is no indication Defendants will further defend against the action.

### E.    Factor VI—Reason for Default

This factor turns on whether a default may have been the product of excusable neglect.  *Eitel*, 782 F.2d at 1471–72.  There is no evidence of excusable neglect here.  Plaintiffs properly served Defendants, yet Defendants have declined to appear or take any part in this litigation.  Where, as here, a defendant "has failed to act despite opportunity to do so, with full knowledge that a lawsuit was filed against him and that it was his responsibility to respond," this factor favors granting a default judgment.  *Adobe Sys Inc. v. Kern*, No. C 09-1076 CW (JL), 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009)

### F.    Factor VII—Policy Favoring Merits Decisions

Although this factor, by its nature, favors defendants because it encourages merits decisions, "[t]he fact that Rule 55(b) has been enacted . . . indicates that 'this preference, standing alone, is not dispositive.'"  *Landstar Ranger*, 725 F. Supp. 2d at 922 (citing *PepsiCo*, 238 F. Supp. 2d at 1177).  Further, in the present case, there is no indication that a merits decision is practicable; Defendants have yet to answer Plaintiffs' Complaint and

defend this action.  Thus, the timely administration of justice outweighs the strong policy for merits decisions.

On balance, weighing the *Eitel* factors reveals that a default judgment is appropriate. Accordingly, the Court **GRANTS** Plaintiffs' Renewed Motion for Default Judgment.

## III.    Remedies

### A.    *Trademark Infringement Statutory Damages*

Given Defendants' failure to participate in the case, Plaintiffs seek statutory damages as their sole monetary remedy for Defendants' Lanham Act violations under 15 U.S.C. § 1117(c).  Mot. at 24–25.  Section 1117(c) authorizes statutory damages in the amount of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c).  In order to invoke the civil monetary remedies under § 1117, a plaintiff "must establish that (1) [the defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive."  *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (citations omitted).

As discussed above, *supra* Section II.B, Defendants intentionally infringed upon Plaintiffs' unregistered Word and Eye Marks, exposing Defendants to civil liability under 15 U.S.C. § 1125.  However, claims under § 1125 do not automatically unlock the § 1117(c) statutory damages Plaintiffs seek.  Only claims under § 1114 permit plaintiffs to "claim actual damages, court costs, defendants' profits, treble damages, and statutory damages for each infringed mark; recovery under § 1125 is limited to actual damages."  *Tortilla Town, Inc. v. Tortilla Town, LLC*, No. SA-22-CV-00420-XR, 2022 WL 22843813, at *4 (W.D. Tex. Nov. 7, 2022).  This is because "[s]tatutory damages are available only

/ / /

for *counterfeiting of a registered mark*."[5]  *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008) (emphasis added).  Here, because Plaintiffs have only shown that Defendants infringed upon unregistered marks, they have not met their burden of showing that they are entitled to statutory damages.  *See Off-White LLC v. Beijing Yinyu Trading Co.*, No. 20-CV-7894-LTS, 2022 WL 846833, at *8 (S.D.N.Y. Mar. 22, 2022); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 881–82 (S.D. Ohio 2007) ("The Lanham Act provides for statutory damages in cases involving the use of a counterfeit mark, . . . defined as 'a counterfeit of a mark that is registered on the principal register in the [PTO] . . . .'" (quoting 15 U.S.C. § 1116(d)(1)(B))).  Accordingly, the Court **DENIES** Plaintiffs' request for statutory damages in the amount of $200,000.

### B.    Permanent Injunction

The Lanham Act "vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116).  Unlike the statutory damages discussed above, injunctive relief is available to protect against registered and unregistered marks alike.  *See* 15 U.S.C. § 1116(a).  A party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and

---

[5] Just because Plaintiffs label Defendants' marks as "counterfeit" in their Motion does not mean the marks fit the statutory definition of "counterfeit mark" within the Lanham Act.  *See* 15 U.S.C. § 1116(d)(1)(B) (defining "counterfeit mark").  Statutory damages under § 1117(c), however, are only available in cases "involving the use of a counterfeit mark (as defined in section 1116(d) of [Title 15])."  *See* 15 U.S.C. § 1117(c).  Unlike here, Plaintiffs' only cited authorities awarded statutory damages in cases involving marks registered with the PTO.  *See, e.g.*, *Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 WL 1853424, at *3 (S.D. Ohio May 7, 2010) ("Coach presented evidence of its ownership of seven valid registered trademarks that have been infringed by Defendants."); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 877 (S.D. Ohio 2007) ("Office 2000 Pro also bears a number of trademarks that Microsoft has registered with the [PTO]."); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1077 (C.D. Cal. 2012) ("In 2007, Plaintiff filed an application to register the Mark, and subsequently became the owner of [the registered Mark].").

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Although irreparable harm was once presumed in meritorious trademark infringement actions, irreparable harm now "must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1248–49 (9th Cir. 2013) (recounting via caselaw prior presumption and subsequent Supreme Court and Ninth Circuit developments).

Plaintiffs demonstrate that a permanent injunction is appropriate. As to irreparable injury, Plaintiffs argue that Defendants' continuing operation of their smoke shop is causing Plaintiffs the "loss of control over [their] mark, reputation and goodwill." Mot. at 26 (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). Plaintiffs attest that "they spent considerable time and effort building the reputation" since 1997, and indeed, the Medina Declaration corroborates that assertion. *See* Medina Decl. ¶ 4 (describing Plaintiffs' use of billboards, online advertising, and automobile advertising to promote their smoke shop, dating back to at least 2012). Thus, Defendants' continuing unlawful activities undermine Plaintiffs' investment in its brand and its customer and distributor relationships, constituting irreparable harm. *See Stuhlbarg*, 240 F.3d at 841. Accordingly, the Court finds the effects of Defendants' actions to constitute irreparable harm and that this factor weighs in favor of issuing a permanent injunction.

As to inadequate remedies at law, Plaintiffs argue that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Mot. at 28 (quoting *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). The Court agrees with Plaintiffs and finds this case to be "especially appropriate" for an injunction based on the similarities between Defendants' smoke shop and Plaintiffs' smoke shops. *See Sandlin*, 846 F.2d at 1181. Plaintiffs have also shown they have no adequate

remedy at law on account of Defendants' default.  *See Herman Miller Inc. v. Alphaville Design Inc.*, No. C 08-03437 WHA, 2009 WL 3429739, at \*8 (N.D. Cal. Oct. 22, 2009) (granting permanent injunction on default because "[defendant]'s refusal to answer or appear in this action makes it difficult for plaintiff to prevent further infringement").

Third, the balance of hardships weighs decisively in Plaintiffs' favor.  As Plaintiffs note, refraining from willful trademark infringement imposes no hardship on an infringing party.  Mot. at 26 (citing *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012)); *see also Deckers Outdoor Corp.*, 2014 WL 4679001, at \*13 ("There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law.").  Defendants can simply open their smoke shop by a different name that does not exploit the goodwill built up over the years by Plaintiffs. Plaintiffs, on the other hand, will continue to suffer the irreparable harm detailed above. Accordingly, the Court finds that the balance of hardships tips in Plaintiffs' favor and that this factor weighs in favor of issuing a permanent injunction.

Fourth, and finally, issuing a permanent injunction would serve the public interest. As Plaintiffs argue, such an order would prevent consumer confusion and protect their property interests in their various trademarks.  Mot. at 27 (citing *State of Idaho Potato Comm'n*, 425 F.3d at 715).  And there is no discernable public interest served by allowing Defendants to continue their infringing activity.  Accordingly, the Court finds that the public interest is served by granting a permanent injunction and that this factor weighs in favor of issuing a permanent injunction.

Because all four factors weigh in favor of granting a permanent injunction, the Court **GRANTS** Plaintiffs' request for a permanent injunction.

### C.    *Cancellation of Defendants' PTO Trademark Applications*

Plaintiffs begin their Motion by asking the Court to order "the rescission/invalidation of Defendants' pending PTO trademark applications," Mot. at 7, but they elaborate not one word more on the request.  Plaintiffs submit no case law from which the Court may draw, nor do they even cite the statutory provision purportedly authorizing the Court to grant

such relief.  As undeveloped as this hasty request may be, it is equally legally deficient.

Under 15 U.S.C. § 1119, courts have "concurrent authority with the PTO to cancel or otherwise determine the rights to trademark registrations."  *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1206 (D. Nev. 2003) (citing *Sperry Rand Corp. v. Seawol Distribs., Inc.*, 140 U.S.P.Q. 532 (S.D. Cal. 1964)).  But that authority comes with a catch—the action in which a party asks the court for such a remedy must be one "*involving a registered mark*."  15 U.S.C. § 1119 (emphasis added).  In other words, "cancellation may only be sought if there is already an ongoing action that involves a registered mark . . . ."  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014).

Just last year, the Ninth Circuit reaffirmed this principle, extending the district court's jurisdiction over PTO operations to include pending trademark applications in addition to issued trademark registrations.  *See BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 671 (9th Cir. 2024) ("We thus hold that, in an action involving a registered trademark, district courts have jurisdiction to consider challenges to a party's trademark applications.").  Importantly, the court reiterated that, for the "district court to adjudicate trademark applications," the case must "already involve[] a registered mark . . . ."  *Id.*  To conclude otherwise would be to thwart "[t]he plain language of [§ 1119, which] states that cancellation is available in 'any action involving a registered mark.'"  *Airs Aromatics*, 744 F.3d at 599.  Thus, "cancellation may only be sought if there is already an ongoing action that involves a registered mark . . . ."  *Id.*

It is undisputed here that no Party to this lawsuit has a registered trademark with the PTO.  *See* FAC ¶¶ 11–13, 18 (describing Plaintiffs' and Defendants' currently pending trademark applications).  Indeed, the Court's own search of the PTO Trademark Electronic Search System ("TESS") confirms as much.[6]  *See Search Trademark Database*, USPTO,

---

[6] The Court may take judicial notice of records from the PTO's TESS pursuant to Federal Rule of Evidence 201.  *See, e.g.*, *Nasser v. Julius Samann, Ltd.*, No. 17-cv-863-BTM-MDD, 2020 WL 10457001, at *1 (S.D. Cal. Aug. 28, 2020).

https://tmsearch.uspto.gov/search/search-results (search in search bar for "Vishions") (last visited Feb. 10, 2025) (displaying three pending applications filed by Plaintiff TMSSS Enterprise LLC (Serial Nos. 97512836, 98282234, 98282299) and two pending applications filed by Defendant James Tooma (Serial Nos. 97449167, 97449152)). In their Motion, Plaintiffs do not address the text of § 1119 or the mountain of case law reflecting the necessary jurisdictional hook of the existence of a registered trademark in order for the Court to act under § 1119. *See, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18cv967-GPC (MSB), 2020 WL 5797827, at *8 (S.D. Cal. Sept. 29, 2020) ("Where an application relates to a registration that is already properly before the Court under § 1119, the court has jurisdiction to consider it."); *Bd. of Regents of Univ. of Tex. Sys. v. Reynolds*, No. 1:18-cv-182-RP-ML, 2019 WL 4980445, at *4 (W.D. Tex. July 31, 2019) ("In order for the Court to exercise jurisdiction over pending applications, one of the parties must have a registered trademark which has a sufficient nexus with the dispute over the pending applications." (quoting *Amy's Ice Cream, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 744–45 (W.D. Tex. 2014) (internal quotations omitted))). Plaintiffs are free to oppose the applications Tooma submitted to the PTO under 15 U.S.C. § 1063 (prescribing opposition procedures before the PTO), but they are not free to "short-circuit Congress's will by interfering prematurely" in the present action. *BBK Holdings*, 97 F.4th at 676 (Bumatay, J., dissenting) (describing the "back-and-forth" procedure before the PTO for parties challenging a trademark application). Accordingly, the Court **DENIES** Plaintiffs' request for cancellation of Defendants' pending trademark applications.

### D.    *Attorneys' Fees and Costs*

Title 15 U.S.C. § 1117(a) provides that, under the Lanham Act, a court "in exceptional cases may award reasonable attorney fees to the prevailing party."[7] For a case

---

[7] Although "the Ninth Circuit has not reached the issue of whether 'an election to receive statutory damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the final

to warrant an award of attorney fees under this provision requires a court to find that "the defendant acted maliciously, fraudulently, deliberately, or willfully." *K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1081–82 (9th Cir. 2007) (citing *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005)). This determination is a question of law for the court. *Watec Co.*, 403 F.3d at 656.

As noted above, Plaintiffs' FAC alleges Defendants willfully infringed Plaintiffs' marks. FAC ¶ 4(a). Because Defendants have not responded to Plaintiffs' allegations, thus conceding the willfulness of their actions, the Court awards Plaintiffs reasonable attorneys' fees.[8] *Herman Miller Inc.*, 2009 WL 3429739, at *10 (awarding plaintiff attorneys' fees on default judgment in a trademark infringement case where the defendant willfully infringed).

### 1.    Fees

To determine whether the fees sought are reasonable under federal law, the court must first calculate the "lodestar figure" by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court determines a reasonable hourly rate by looking to the

---

sentence of § 1117(a),'" *Starbuzz Tobacco, Inc. v. Addison Specialty Servs., Inc.*, No. 13-CV-1539-MMA (KSC), 2015 WL 11251805, at *5 (S.D. Cal. July 29, 2015), district courts in this circuit have coalesced around an understanding that it does not, *see id.* (finding persuasive the Second Circuit's reasoning in *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012)); *see also Idle Media Inc. v. Wisdom*, No. LA CV18-03817 JAK (KSx), 2019 WL 13039655, at *13 n.7 (C.D. Cal. June 25, 2019) (noting the Ninth Circuit's unpublished adoption of the same in *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, 741 F. App'x 393, 397 (9th Cir. 2018)); *Ak Futures, LLC v. LCF Labs Inc.*, No. 8:21-cv-2121-JVS(ADSx), 2023 WL 8000226, at *6 (C.D. Cal. Sept. 1, 2023) ("A party electing statutory damages under § 1117(c) is entitled to apply for attorney's fees under § 1117(a)."). The Court sees no reason to depart from this increasingly settled understanding.

[8] "Courts have inferred willful violation from a defendant's failure to comply with the judicial process or to participate in any way in the litigation at issue." *Belks Media v. OnlineNIC*, No. C09-00198 HRL, 2010 WL 7786122, at *3 n.4 (N.D. Cal. Aug. 23, 2010), *report and recommendation adopted*, No. C 09-00198 SBA, 2011 WL 5038576 (N.D. Cal. Oct. 24, 2011); *see also Microsoft Corp. v. Marturano*, No. 1:06cv1747 OWW GSA, 2009 WL 1530040, at *6 (E.D. Cal. May 27, 2009) (first citing *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003); and then citing *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)).

prevailing market rate in the community for comparable services. *See Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003); *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). The party requesting fees bears the burden of adducing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan*, 815 F.2d at 1263.

Here, Plaintiffs request $35,480 in attorneys' fees for a combined 88.7 hours of legal work. Attorney Susana Mahady, billing at a rate of $400/hour, states she billed $6,200 on this matter. Amended Declaration of Susana M. Mahady ("Am. Mahady Decl.," ECF No. 13) ¶ 9. She also states attorney Stephen Anderson, billing at the same rate, billed $29,280 on this matter.[9] *Id.*

As to the hourly rates, Plaintiffs have satisfied their burden, if only marginally. "The Supreme Court has recognized that determining a reasonable or prevailing rate of compensation is 'inherently difficult.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n.11). For that reason, it is incumbent upon "the fee applicant to produce evidence 'that the requested rates are in line with those prevailing in the community.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum*, 465 U.S. at 895 n.11). Though "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate," *United Steelworks of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citing *Chalmers*, 796 F.2d at 1214), the fee applicant must provide more than a bare affidavit attesting to the appropriate hourly rate, *see Jordan*, 815 F.2d at 1263 ("The fee applicant has the burden of producing satisfactory evidence, *in addition to* the affidavits of its

---

[9] The Amended Declaration filed by Mahady appears to contain a typographical error, swapping the total number of hours worked by Mahady with those of Anderson. *See* ECF No. 13 ¶ 9. Because both attorneys billed for this matter at the same hourly rate and the level of experience and skill of both attorneys appear comparable, the clerical mistake has no impact on the total amount billed. The Court will simply aggregate the two to reach the final requested amount.

counsel, that the requested rates are in line with those prevailing in the community . . . ." (emphasis added)).

Plaintiffs have done just enough to persuade the Court that their asserted hourly rate is reasonable.  The Mahady Declaration provides that, based on the thirty-plus years of experience that Anderson and she have practicing intellectual property law, the hourly rates used in this case "are reasonable and commensurate with [their] experience and with the rates being charged by other attorneys in the San Diego market."  Am. Mahady Decl. ¶ 12. Mahady supplemented her Declaration with a list outlining her extensive experience litigating intellectual property matters in the federal district courts.  *See id.* at 9–19. Generally, self-serving, conclusory affidavits alone are insufficient to meet a fee applicant's evidentiary burden.  *See Hammett v. Sherman*, No. 19cv605-LL_AHG, 2023 WL 5340802, at *3 (S.D. Cal. Aug. 17, 2023) (denying a motion for attorneys' fees where the fee applicant provided no evidence "apart from the declarations of the Attorney Defendants' own counsel").  Here, however, Mahady refers the Court to the *Laffey* Matrix to further support her claim.

"[T]he Laffey matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C.," and the Matrix has been cited approvingly for use in fee-shifting cases in the D.C. Circuit.  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (citing *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984)).  In contrast to the D.C. Circuit's approval, however, "the Ninth Circuit has not specifically endorsed the *Laffey* Matrix."  *See Ramirez v. Escondido Unified Sch. Dist.*, No. 11cv1823 DMS (BGS), 2014 WL 12675859, at *3 (S.D. Cal. Apr. 17, 2014). Indeed, the Ninth Circuit has raised doubts that the Matrix is a reliable indicator of "a legal market 3,000 miles away," questioning whether rates in the District of Columbia could have any bearing on disparate rates from around the country.  *See Prison Legal News*, 608 F.3d at 454.

Courts in this district have noted the Ninth Circuit's skepticism, reaching conflicting

decisions at times as to whether the *Laffey* Matrix should be considered while resolving a fees request. *Compare Ramirez*, 2014 WL 12675859, at *3 ("Accordingly, the Court considers, but declines to base the determination of reasonable billing rates entirely on, the *Laffey* Matrix."), *and Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *9 (S.D. Cal. Jan. 2, 2014) ("The hourly rates seem reasonable, and the Laffey Matrix lends the rates further credibility."), *with Perez v. Cozen & O'Connor Grp. Long Term Disability Coverage*, 2007 WL 2142292, at *2 (S.D. Cal. Mar. 27, 2007) (declining to consider the *Laffey* Matrix "in determining the reasonable hourly rates for counsel"), *and Ruiz v. XPO Last Mile, Inc.*, No. 5cv2125 JLS (KSC), 2017 WL 1421996, at *4 n.1 (S.D. Cal. Apr. 20, 2017) ("As Defendant notes, Courts in our Circuit do not find the Laffey Matrix persuasive regarding the prevailing rates for our community for similar work.").

In this case, the Court finds that Plaintiffs' use of the *Laffey* Matrix adds enough insight to justify their suggested hourly rate. The Matrix calls for a 2024 hourly rate of $1,141 for attorneys with over twenty years of experience, an hourly rate almost three times greater than the one requested by Plaintiffs. *See* LAFFEY MATRIX, http://www.laffeymatrix.com/see.html (last visited Feb. 10, 2025). Thus, Plaintiffs use the Matrix not to inflate but rather to demonstrate the conservative nature of their proposed hourly rate. Given counsel's extensive experience in related matters, the recognition from courts "that intellectual property work requires specialized knowledge," and the steep downward departure that Plaintiffs' counsel charged as compared to the *Laffey* Matrix, the Court finds the $400 hourly rate reasonable. *See LG Corp. v. Huang Xiaowen*, No. 16-CV-1162 JLS (NLS), 2017 WL 3877741, at *2 (S.D. Cal. Sept. 5, 2017) (citing *Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014)).

As to the hours incurred, Plaintiffs satisfied their burden by providing a detailed activities report, specifying each task that went into preparing this case along with a duration component broken down to the tenth of an hour. *See id.* at 20–22. These tasks, the time entries for which were "generally recorded contemporaneously" by counsel, *see*

*id.* ¶ 11, include drafting the Complaint and FAC, affecting service of process, preparing the default judgment papers, and conferring with their client to add supporting documentation in response to the Court's Order denying the initial effort to obtain default judgment, *see id.* at 21–22. Upon review of the activities report, the Court finds the hours claimed by Plaintiffs to be reasonable and adequately documented. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

Accordingly, in light of the evidence presented, the Court finds Plaintiffs' request for attorneys' fees in the amount of $35,480 to be reasonable and awards $35,480 in attorneys' fees.

### 2. Costs

Prevailing parties under § 1125(a) are entitled to costs under § 1117(a). *See Sream, Inc. v. Andy's Smoke Shop, Inc.*, No. 18cv1676-MMA (RBB), 2018 WL 5279130, at *9 (S.D. Cal. Oct. 23, 2018); *see also* 15 U.S.C. § 1117(a) ("When . . . a violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover . . . the costs of the action."). Here, Plaintiffs prevailed in their trademark infringement claim under 15 U.S.C. § 1125(a), thereby entitling them to costs.

Plaintiffs request $480 for filing and service of process fees. Am. Mahady Decl. ¶ 14. The Court finds these costs reasonable and awards $480 in costs. *See JUUL Labs, Inc. v. Lakeside Smokeshop*, No. 21-cv-00398-WQH-BLM, 2021 WL 5549057, at *2 (S.D. Cal. Nov. 16, 2021) (awarding costs for filing and service of process fees after granting default judgment for various Lanham Act violations).

### CONCLUSION

For the reasons stated above, the Court:

(1) **GRANTS** Plaintiffs' Renewed Motion for Default Judgment (ECF No. 12);

(2) **GRANTS** Plaintiffs' request for a permanent injunction. Defendants and each of their respective employees, agents, partners, officers, directors, owners,

shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, alter-egos, and all persons in active concert or participation with any of them are **HEREBY ENJOINED** from further use of Plaintiffs' Word Marks, Eye Marks, or any confusingly similar terms, phrases, or images;

(3) **DENIES** Plaintiffs' request for statutory damages in the amount of $200,000;

(4) **DENIES** Plaintiffs' request for cancellation of Defendants' pending trademark applications with the PTO;

(5) **ENTERS** Judgment in favor of Plaintiffs against Defendants James Tooma and Chaldean Properties Inc.;

(6) **GRANTS** Plaintiffs' request for attorneys' fees and costs;

(7) **AWARDS** Plaintiffs reasonable attorneys' fees in the amount of $35,480; and

(8) **AWARDS** Plaintiffs costs in the amount of $480.

(9) Defendants' liability for the total amount is joint and several.

The Clerk of Court is ordered to enter judgment in favor of Plaintiffs.

**IT IS SO ORDERED.**

Dated:  February 10, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

24